FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2000 APR 12 A 11:05

LORETTA G. WHYTE
CLERK

Minute Entry
Africk, M.J.
April 12, 2000

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| RYDELL BIENAIME | CIVIL ACTION |
| VERSUS | NO. 00-284 c/w 00-473 |
| CAROLYN KITZMAN, et al. | SEC: "G"(3) |

On October 28, 1999, Kevin Joseph Mosley was killed in an elevator shaft while visiting the DeGaulle Manor, Ltd. d/b/a Live Oak Apartments ("DeGaulle") apartment complex.[1] On November 22, 1999, Kevin's mother, Tara Mosley, filed a petition for damages in Civil District Court for the Parish of Orleans against DeGaulle and William J. Crisler, Jr. ("Crisler"), who is alleged to be an officer of DeGaulle.[2] On December 1, 1999, Kevin's father, Rydell Bienaime, filed a petition for damages in Civil District

---

[1] Rec. Doc. No. 1, state court petition.

[2] Tara Mosley v. DeGaulle Manor, Ltd. d/b/a Live Oak Apartments, C. A. 00-473 "B"(4) (E. D. La.), Rec. Doc. No. 1; see also Rec. Doc. No. 1, Notice of Removal, ¶ 1.

Court for the Parish of Orleans against Carolyn Kitzman ("Kitzman"), Crisler, Montgomery Kone, Inc. ("Kone"), the manufacturer/maintainer of the elevator, and Zurich American Insurance Company.[3] On January 28, 2000, Kone removed Rydell Biename's lawsuit to this Court[4] alleging diversity jurisdiction.[5] On February 14, 2000, DeGaulle removed Tara Mosley's lawsuit to this Court alleging diversity jurisdiction.[6] On March 3, 2000, an order was issued consolidating the two lawsuits.[7]

Before the Court is Mosley's motion for leave to amend her petition, individually and on behalf of her deceased minor son[8] and add as a defendant Carolyn Kitzman, the manager of the apartment complex at which her son was killed. DeGaulle opposes the motion arguing that plaintiff has not alleged facts and circumstances sufficient to support a claim against Kitzman and that to the extent plaintiff is asserting that the elevator was defective, the elevator manufacturer is the proper defendant.[9] Kitzman

---

[3] State court petition, Rec. Doc. No. 1. Carolyn Kitzman was never served. See Notice of Removal Rec. Doc. No. 1, ¶ 7.

[4] Rec. Doc. No. 1. Kone also filed a supplemental notice of removal. See Rec. Doc. No. 4.

[5] Rec. Doc. No. 1.

[6] Tara Mosley v. DeGaulle Manor, Ltd. d/b/a Live Oak Apartments, C. A. 00-473 "B"(4), Rec. Doc. No. 1.

[7] Rec. Doc. No. 8.

[8] Rec. Doc. No. 10.

[9] Rec. Doc. No. 13.

is a resident of the State of Louisiana.[10]

Federal Rule of Civil Procedure 15(a) provides that leave to amend pleadings "shall be freely given when justice so requires." The policy of Rule 15 is to permit liberal amendment of pleadings in the absence of substantial prejudice to defendants that cannot be cured by other means.[11]

The district court, when faced with an amended pleading naming a new non-diverse defendant in a removed case, should scrutinize that amendment more closely than an ordinary amendment.[12] "[T]he right to freely amend set forth in Rule 15 of the Federal Rules of Civil Procedure does not apply where a party seeks to add a non-diverse party in a removed case."[13] "The Hensgens court noted its concern in such cases with the 'competing interests' of avoiding 'parallel federal/state proceedings with the inherent dangers of inconsistent results and the waste of judicial resources,' while at the same time respecting a diverse defendant's 'choice of a state

---

[10] Supplemental and Amended Petition, ¶ 1. Although plaintiff's counsel refers to Kitzman as a resident of the State of Louisiana, the Court is advised that plaintiff takes the position that Kitzman is a "citizen," i.e. domiciliary, of the State of Louisiana.

[11] Jones v. Scottsdale Insurance Co., 1998 WL 160918, *1 (E.D.La.))(*citing* Dussouy v. Gulf Coast Investment Corp., 660 F.2d 594, 597 (5th Cir.1981)).

[12] Hensgens v. Deere & Co., 833 F.2d 1179, 1182 (5th Cir. 1987), *cert. denied*, 493 U.S. 851, 110 S.Ct. 150, 107 L.Ed.2d 108 (1989); see 6 C.Wright, A. Miller & M. Kane, Federal Practice & Procedure: Civil, § 1477, at 562 (2d ed. 1990).

[13] Sharp v. K-Mart, 991 F.Supp. 519, 521 (M.D. La. 1998).

or federal forum.'"[14]

"The decision to allow an amendment adding non-diverse parties under Section 1447(e) is a discretionary one."[15] "Factors to be considered are:[16] (1) the extent to which a joinder of the non-diverse party is sought to defeat federal jurisdiction; (2) whether plaintiff has been dilatory in asking for the amendment; (3) whether plaintiff would be significantly injured if the amendment was not permitted; and (4) the equities."[17]

---

[14] Prosun Holdings, L.L.C. v. The Millers Mutual Insurance Company and Scottsdale Insurance Company, 1998 WL 470502, *1 (citations omitted).

[15] Ancar v. Philip Services, Corp., 1999 WL 1243066 (E. D. La.)(Berrigan, J.)(*citing* Hensgens v. Deere & Co., 833 F.2d 1179 (5th Cir.1987), *appeal after remand*, 869 F.2d 879 (5th Cir.1989), *cert. denied*, 493 U.S. 851 (1989)).

[16] 28 U.S.C. § 1447(e), provides that "[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." Although Hensgens was decided before 28 U.S.C. § 1447 was amended to include subsection (e), the Fifth Circuit has cited Hensgens with approval after the passage of § 1447(e). See Tillman v CSX Transportation, Inc., 929 F.2d 1023 (5th Cir.), *cert. denied,* 502 U.S. 859, 112 S. Ct. 176, 116 L. Ed. 2d 139, (1991); see also Sharp v. Kmart Corp., 991 F. Supp. at 522. The fraudulent joinder doctrine does not apply to post-removal joinder. Cobb v. Delta Exports, Inc., 186 F.3d 675, 677-678 (5th Cir. 1999).

[17] Ancar v. Philip Services, Corp., 1999 WL 1243066, *2. The United States Supreme Court's decision in Freeport-McMorRan, Inc. v. KN Energy, Inc., 498 U.S. 426, 111 S.Ct. 858, 112 L.Ed.2d 951 (1991), does not require a different analysis. In Freeport, after the plaintiff filed a complaint in federal court, plaintiff transferred its interest in the contract at issue to a limited partnership and then sought to substitute the non-diverse limited partnership as a plaintiff. Plaintiff received permission from the district court to amend its complaint pursuant to Fed. R. Civ. P. Rule 25(c) which relates to substitution of the parties when there has been a transfer of interest. The Supreme Court stated that the limited partnership was not an indispensable party to the litigation and it held that the addition of a non-diverse party pursuant to Rule 25(c) did not deprive the district court of subject

The first Hensgens factor is the extent to which joinder of a non-diverse party is sought to defeat diversity jurisdiction. If Mosley has a valid cause of action against Kitzman, "that would indicate that the principal purpose of the amendment was not to defeat diversity."[18]

In her complaint, Mosley states.

> 2.
>
> On October 28, 1999, 13-year old Kevin Joseph Mosley ... was visiting his aunt at the DeGaulle Manor, Ltd. d/b/a Live Oak Apartments in New Orleans, Louisiana.
>
> ...
>
> 4.
>
> Master Mosley climbed out of an open hole in the top of the cab of the elevator on October 28, 1999.
>
> 5.
>
> Several hours later, a wall was removed to retrieve Master Mosley from the elevator shaft.
>
> 6.
>
> Master Mosley was pronounced dead in the early morning hours

---

matter jurisdiction. Id. 498 U.S. at 428, 111 S.Ct. at 860.

A growing number of courts have not applied the holding of Freeport when the case involved 28 U.S.C. § 1447(e) rather than a Fed. R. Civ. P. 25(c) transfer of interest. See Cobb v. Delta Exports, Inc.,186 F.3d at 678 (Freeport is limited to the context of an addition pursuant to Fed. R. Civ. P. 25); see Ingram v. CSX Transportation, 146 F.3d 858 (11 Cir. 1998)(Freeport inapplicable where no substitution of party under Rule 25(c)); see also Williams v. ADT Security Services, Inc., 1998 WL 249223 (E.D.La. 1998)(where case does not involve a Rule 25(c) substitution, joinder of nondiverse defendants after removal destroys diversity jurisdiction)and cases cited therein; but see Kerr v. Smith Petroleum Co., 889 F.Supp. 892 (E.D.La.1995)(Jones, J.); Shaw v. Meridian Oil, Inc., 1996 WL 521411 (W.D.La.1996)(Wilson, Mag.).

[18] Nuccio v. KFC Nat. Management Co., 1996 WL 137637 (E.D.La.) (*citing* Tillman v. CSX Transportation, Inc., 929 F.2d 1023, 1029 (5th Cir.1991)).

of October 29, 1999 ...

7.

Master Mosley's wrongful death was caused by the negligence of DeGaulle Manor, Ltd. d/b/a Live Oak Apartments under the theories of strict liability, gross negligence, total neglect and negligence ...[19]

In her motion to amend, plaintiff seeks to add the following:

1.

3.   Made additional defendant herein is, Carolyn Kitzman. Ms. Kitzman is a person of full age and majority and a resident of the State of Louisiana.

6a.
Carolyn Kitzman was the manager of the apartment complex, DeGaulle Manor Ltd. d/b/a Live Oak Apartments, at the time of and prior to the death of Kevin Mosley.

6b.
Carolyn Kitzman communicates with existing tenants and employs and supervises the groundskeeping crews which clean the interior of the elevator cars.

6c.
Carolyn Kitzman should have been aware of the complaints made concerning the condition of the elevators and should have been aware of the obvious defects in the elevator in which Kevin Mosley was killed.

6d.
Carolyn Kitzman owed a duty, as the residential manager of the apartments, to the tenants and their guests who used the elevators to provide safe, non-defective elevators.[20]

Plaintiff alleges that at the time of and prior to the death of Kevin Mosley, Kitzman was the manager of the DeGaulle apartment. She alleges that "[o]ne of the

---

[19] See Tara Mosley v. DeGaulle Manor, Ltd. d/b/a Live Oak Apartments, C. A. 00-473 "B"(4), state court petition, Rec. Doc. No. 1.

[20] First Supplemental and Amended Petition, attached to plaintiff's motion to amend.

primary reasons plaintiff has a cause of action against defendant DeGaulle ... at all is through the negligence of [the] manager."[21] Plaintiff states that "[i]t is through the negligence of the operating manager, Carolyn Kitzman, that negligence is imputed to the named defendant, DeGaulle Manor Ltd. d/b/a Live Oaks Apartments."[22] Defendant states, in opposition, that "[t]here are simply no allegations in this petition that would impose a personal duty on Ms. Kitzman to the plaintiff, the breach of which specifically caused the plaintiff's damages."[23]

In Canter v. Koehring Co.,[24] the Louisiana Supreme Court set forth the following prerequisites which must be satisfied prior to imposing personal liability on an employee:

> 1. The principal or employer owes a duty of care to the third person (which in this sense includes a co-employee), breach of which has caused the damage for which recovery is sought.
> 2. This duty is delegated by the principal or employer to the defendant.
> 3. The defendant officer, agent, or employee has breached this duty through personal (as contrasted with technical or vicarious) fault. The breach occurs when the defendant has failed to discharge the obligation with the degree of care required by ordinary prudence under the same or similar circumstances-- whether such failure be due to malfeasance, misfeasance, or nonfeasance, including when the failure results from not

---

[21] Motion to amend, p.2.

[22] Motion to amend, p. 2.

[23] Memorandum in opposition, p. 2.

[24] 283 So2d. 716, 721 (La. 1973). "While superseded by the 1976 amendment to LSA-R.S. 23:1032 to the extent that executive officers of a plaintiff's direct or statutory employer cannot be individually liable for the plaintiff's injuries, Canter is still applicable in determining when an executive officer of merely a premise owner is individually liable for injuries to a third person." Winningkoff v. American Cyanamid, 2000 WL 235648, *6 (E. D. La.).

> acting upon actual knowledge of the risk to others as well as from a lack of ordinary care in discovering and avoiding such risk of harm which has resulted from the breach of the duty.
> 4. With regard to the personal (as contrasted with technical or vicarious) fault, personal liability cannot be imposed upon the officer, agent, or employee simply because of his general administrative responsibility for performance of some function of the employment. He must have a personal duty towards the injured plaintiff, breach of which specifically has caused the plaintiff's damages. If the defendant's general responsibility has been delegated with due care to some responsible subordinate or subordinates, he is not himself personally at fault and liable for the negligent performance of this responsibility unless he personally knows or personally should know of its non-performance or mal-performance and has nevertheless failed to cure the risk of harm.[25]

Using the Canter analysis, the Court must first determine whether the employer owed a duty of care to the deceased minor child, the breach of which caused plaintiff's injuries. Mosley sued DeGaulle pursuant to a theory of negligence and strict liability.[26]

> Although the two theories constitute separate and distinct avenues for relief for damages resulting from a dangerous condition on land, the analysis that courts utilize when applying the two theories is similar. Under either theory, the plaintiff must prove 1) the thing which caused the damage was in the custody of the defendant; 2) the thing contained a "defect" (i.e., it had a condition that created an unreasonable risk of harm to the plaintiff); and 3) the "defective" condition of the thing caused the plaintiff's injuries. Sistler v. Liberty Mutual Insurance Company, 558 So.2d 1106 (La.1990). In essence, the only difference between the negligence theory of recovery and the strict liability theory of recovery is that the plaintiff need not prove the defendant was aware of the existence of the "defect" under a strict liability theory. Under the negligence theory, it is the defendant's awareness of the dangerous condition of the property that gives rise to a duty to act. Under a strict

---

[25] See also Cook v. Shoney's, Inc., 1999 WL 1000506 (E. D. La.)(*citing* Canter v. Koehring, Co., 283 So. 2d at 721).

[26] Rec. Doc. No. 1.

> liability theory, it is the defendant's legal relationship with the property containing a defect that gives rise to the duty. Loescher v. Parr, 324 So.2d 441, 446 (La.1976). Under both theories, the absence of an unreasonably dangerous condition of the thing implies the absence of a duty on the part of the defendant.[27]

Plaintiff has sufficiently alleged that DeGaulle owed a duty of care to Kevin Mosley.[28] In the complaint, plaintiff alleges that DeGaulle failed to timely respond to complaints about the elevator and failed to fix the obvious defects in the elevator.[29]

The second Canter query is whether DeGaulle delegated its duty of care to Kitzman. In Kitzman's affidavit, filed as an attachment to defendant's opposition, she states specifically that the owner of the Live Oak Apartments never delegated "to her any personal or individual responsibility for the repair of any elevators which were located on the premises." In addition, Kitzman states that "[p]ersonal and individual responsibility for maintenance of the elevators, of the Live Oaks Apartments is not a delegated job function of the residential manager." In the absence of any evidence by plaintiff to the contrary, the Court is unable to find that such a duty was in fact delegated to Kitzman. Whether or not discovery will reveal otherwise is presently

---

[27] Oster v. Department of Transportation and Development, 582 So.2d 1285, 1288 (La. 1991).

[28] See e.g., Burton v. Housing Authority of New Orleans, 623 So.2d 243, 247 (La. App. 4th Cir. 1993)(*citations omitted*)("It is both normal and foreseeable that there will be visitors to apartments, so the duty of an owner of an apartment under Civil code Articles 2317 and 2322 extends to visitors as well as to occupants of the apartment."). Burton also supports the argument that plaintiff could make a negligence claim asserting that Kitzman knew or should have known about an unreasonably dangerous condition at the apartment premises.

[29] Rec. Doc. No. 1, petition of Tara Mosley,

unknown.

The third Canter query is whether Kitzman breached a duty through her personal fault. In the amended complaint, plaintiff alleges that Kitzman "communicates with existing tenants and employs and supervises the groundskeeping crews which clean the interior of the elevator cars."[30] Mosley also alleges, as stated previously, that "Kitzman should have been aware of the complaints made and the obvious defects in the elevator."[31]

The Court notes that although Kitzman's affidavit states that Kitzman had no "personal or individual responsibility" for elevator repair or maintenance, such language is not dispositive of the third Canter factor. Neither is the fact that Kitzman was not present on the premises of the Live Oak Apartments from September 27, 1999, until the end of January, 2000.[32] At this point, there is no evidence before the Court relative to how long the alleged hole in the elevator cab existed. Additionally, although the Kitzman affidavit states that Kitzman had no knowledge of problems with the elevator between the dates set forth above, it may be argued that she should have had knowledge of the same prior to the September 27, 1999, date.

---

[30] First Supplemental and Amended Petition, ¶ 6b.

[31] First Supplemental and Amended Petition, ¶ 6c.

[32] The fact that Kitzman was, according to her affidavit, unaware of any "problems with the subject elevator," raises an additional issue. Are the "problems" referred to in the affidavit those relating to the elevator's ability to operate and/or problems relating to physical defects, i.e., a hole in the cab that did not affect the elevator's operation. The affidavit does not specifically address this issue.

The Canter[33] court particularized the fourth factor stating, "[w]ith regard to the personal ... fault, personal liability cannot be imposed upon the ... employee simply because of his general administrative responsibility for performance of some function of the employment." Whether Kitzman possessed only general administrative responsibilities to care for the elevators at the Live Oak Apartments in her position as general manager is unclear. Kitzman testifies in her affidavit only that "her job functions are administrative in nature, and involve supervising the management operations of the residential leasing office." This statement may not be dispositve of this query. As stated in Canter, responsibility can be assessed against a defendant such as Kitzman if she knew or personally should have known of the non-preformance or mal-performance of a subordinate yet fails to cure the risk of harm.

Whether there exists a claim against Kitzman pursuant to Canter is questionable. Further discovery by the parties will serve to further define the validity or non-validity of plaintiff's causes of action. In assessing the first Hensgens factor, the Court also takes note of the fact that Kitzman was not added by Mosley as a defendant until the case was remanded to federal court. Mosley was on notice that Kitzman may have been responsible on or about December 1, 1999, when the deceased's father filed a lawsuit naming Kitzman, among others, as a defendant in the state court lawsuit.

On balance, the first factor of the Hensgens analysis weighs against the proposed amendment. However, it does not weigh so heavily as to deny the motion

---

[33] 283 So. 2d at 721.

to amend.

The second Hensgens factor is whether Mosley has been dilatory in asking for this amendment. There was no evidence presented to the Court suggesting the same. The Court notes that there has been no preliminary conference in this matter and that pre-trial and trial dates have not been scheduled. Therefore, this factor weighs in favor of plaintiff.

The third Hensgens factor is whether Mosley would be significantly injured if the amendment is not permitted. Again, there was no evidence either in support of or in opposition to this argument. However, if the amendment is not allowed, Mosley will be forced to file a separate lawsuit against Kitzman in state court. To put Mosley in such a position, would be a waste of judicial resources. This factor weighs in favor of plaintiff.

With regard to the fourth factor, the Court finds no other equities argued by counsel. Therefore, the fourth Hensgens factor is a non-factor. Balancing the Hensgens factors, the Court concludes that the amendment should be granted.

Accordingly,

IT IS ORDERED that the motion is GRANTED.

LANCE M. AFRICK
UNITED STATES MAGISTRATE JUDGE